NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3262

LENORA PORZILLO,

Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Lenora Porzillo, of Crofton, Maryland, pro se.

Jeffrey D. Klingman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3262

LENORA PORZILLO,

Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Petition for review of the Merit Systems Protection Board in
DC0752080517-I-2.

_____

DECIDED:  March 12, 2010

_____

Before BRYSON, GAJARSA , and PROST, Circuit Judges.

PER CURIAM.

## DECISION

Lenora Porzillo challenges the decision of the Merit Systems Protection Board sustaining her removal from her position in the Administrative Operations Service ("AOS") of the Department of Health and Human Services ("HHS").  We affirm.

## BACKGROUND

Ms. Porzillo, who was employed by HHS as a Program Support Specialist, was responsible for administering the agency's child care subsidy program, a discretionary employee financial assistance program.  She approved employees' participation in the

program, assessed the dollar amount of any subsidies, and forwarded the information to the vendor for payment. Beginning in December 2006, Ms. Porzillo's first-level supervisor was Dan Clutch.

In a memorandum dated December 4, 2007, Mr. Clutch proposed that Ms. Porzillo be removed based on charges of (1) violating information technology ("IT") security measures (with three specifications); (2) improperly approving child care subsidy payments (with five specifications); and (3) failing to follow supervisory guidance (with one specification). Mr. Clutch's memorandum noted that Ms. Porzillo had been suspended for 14 days in October 2007 for failing to follow supervisory guidance related to the proper use of government e-mail.

With respect to the charge of violating IT security measures, the agency alleged that Ms. Porzillo downloaded copies of an Excel file containing the names and social security numbers of more than 1,000 federal employees from a restricted office file to the hard drive of her government computer. Ms. Porzillo then allegedly e-mailed the Excel file to her personal, commercial e-mail accounts, all in violation of IT security policies. The agency further charged that Ms. Porzillo improperly used the name and password of another employee to gain access to the agency's Management Information Technical Tracking System ("MITTS"). Finally, the agency charged that Ms. Porzillo provided another employee with the combination to the lock on her office door so that he could gain entrance while she was on leave, even though Ms. Porzillo's office contained personally identifiable information ("PII") subject to the Privacy Act.

With respect to the charge of improperly approving child care subsidy payments, the agency alleged that Ms. Porzillo retroactively approved a non-compliant subsidy

application without first seeking the necessary authorization from Mr. Clutch and from the applicant's employer; that Ms. Porzillo failed to obtain the necessary approval from another applicant's employer before retroactively approving an annual subsidy recertification; and that Ms. Porzillo approved subsidy payments for three agency employees at improper rates.

With respect to the charge of failure to follow supervisory guidance, the agency alleged that Ms. Porzillo disregarded Mr. Clutch's instruction to cease further contact with fellow employee Mary Akel. The agency alleged that contrary to that instruction, Ms. Porzillo subsequently sent a message to Ms. Akel accusing her of lying about a previous incident.

After considering Ms. Porzillo's written replies to the removal memorandum, AOS Director Michael Tyllas determined that the charges were supported by the evidence and warranted Ms. Porzillo's removal.

Ms. Porzillo appealed her removal to the Board. The administrative judge who was assigned to the appeal held a two-day evidentiary hearing. In the course of the hearing, Ms. Porzillo denied any misconduct and claimed that the penalty of removal was too severe. She also asserted two affirmative defenses. First, she argued that she was removed for making disclosures protected under the Whistleblower Protection Act, including (1) informing agency officials about the unprotected Excel file containing PII, which was accessible without a password on a public drive; (2) advising officials that Mr. Clutch and others had permitted PII to be transmitted over an insecure fax in a heavily trafficked area of the Program Support Center; and (3) disclosing fraud, waste, and abuse regarding the use of government funds by Program Support Center employees.

Second, Ms. Porzillo claimed that she was removed in reprisal for filing equal employment opportunity complaints.

The administrative judge sustained all three charges against Ms. Porzillo and found that she had failed to prove her affirmative defenses. The administrative judge also concluded that the penalty of removal was reasonable and that the agency had given proper consideration to relevant aggravating and mitigating factors. When the full Board denied Ms. Porzillo's petition for review, the administrative judge's decision became the final decision of the Board. She now petitions for review by this court.

## DISCUSSION

1. Ms. Porzillo argues that the administrative judge erred by failing to take into account all the instances of protected whistleblowing activity that she asserted, such as her disclosures of a potential conflict of interest on the part of an agency official; a personal relationship between a senior employee and his subordinate; and threats of removal directed toward employees who had associated with Ms. Porzillo while she was a union representative.

The administrative judge discussed the whistleblowing allegations that he considered strong enough to support a potential defense. Those were her disclosure of the agency's under-protection and unprotected transmission of documents containing PII (which Ms. Porzillo supported with the Excel document containing PII that she downloaded and sent to her personal e-mail account) and her disclosure of the agency's mismanagement of government funds (which Ms. Porzillo based, in part, on a document she found while using another employee's user name and password to gain unauthorized access to the MITTS system).

The administrative judge found that those disclosures did not lead to Ms. Porzillo's removal. That finding is well supported. With respect to the IT security charges, the evidence shows that the agency removed Ms. Porzillo because she downloaded and e-mailed PII in violation of agency rules and because she used another employee's digital authentication to access documents for which she had no authorization or work-related need, not because she disclosed that the agency had failed adequately to protect the PII information or because materials she found when she obtained unauthorized access to the MITTS system showed mismanagement of funds. Substantial evidence supports the administrative judge's conclusion that HHS showed by clear and convincing evidence that it would have removed Ms. Porzillo without regard to the disclosures she made as a result of her IT policy violations.

As to Ms. Porzillo's contention that the administrative judge overlooked her other claims of whistleblowing disclosures, the administrative judge addressed the two alleged whistleblowing disclosures relating to her IT security violations after considering "the circumstances (as described by the appellant in her appeal and accompanying submissions)." The administrative judge's reference to the "circumstances" described by Ms. Porzillo indicates that he considered the full record, and not merely the particular disclosures he discussed in his opinion. Moreover, a fact-finder's failure to refer to a particular piece of evidence does not mean that the evidence was not considered. See Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). In any event, Ms. Porzillo states in her brief in this court that she included "[e]xtensive documentation" of more than 40 complaints and grievances in her appeal

submissions. Moreover, in her petition for review to the full Board she stated that the administrative judge "assured me that he read everything I submitted. The administrative judge made it perfectly clear during the hearing that all documents submitted were considered evidence and considered." We thus have no reason to believe that the administrative judge ignored any of the evidence regarding whistleblowing that was before him.

2. Ms. Porzillo asserts that HHS violated 5 U.S.C. § 7513(e) by not enabling her to access and review the original files and e-mail messages on the C: drive of her work computer. She makes the related claim that the administrative judge erred by relying on that evidence, which she was unable to verify in its original format.

It appears to be undisputed that the agency provided Ms. Porzillo with a CD containing the relevant e-mail messages and also provided her with paper copies of those materials. Ms. Porzillo contends, however, that it was "my right to see the actual email message on the computer Microsoft Outlook and verify its existence, not a paper copy of an email message. In this day, it is extremely easy to edit computer generated documents, change dates on computers, and move documents from drives." She thus suggests that the agency may have tampered with key documents that were relied upon in charging and removing her.

Government officials are presumed to carry out their duties in good faith. "Unsubstantiated suspicions and allegations are not enough" to overcome that presumption. Spezzaferro v. FAA, 807 F.2d 169, 173 (Fed. Cir. 1986). Ms. Porzillo offers no evidence that any of the files in question were altered or tampered with. We therefore cannot credit her unsubstantiated suggestions of government misconduct.

Section 7513(e), on which Ms. Porzillo relies, provides as follows:

Copies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, . . . shall be furnished . . . to the employee affected upon the employee's request.

The use of the phrase "copies of" indicates that an employee's right to review the designated materials does not include the right to examine the original documents or the databases in which they are stored. We are unaware of any authority suggesting that, in addition to furnishing paper copies of documents, an agency must give a former employee access to the agency's computer system to view documents in their original environment and format. Such a policy would be difficult and time-consuming to implement, and would raise security concerns. Ms. Porzillo does not deny that she received (or already possessed) accessible, readable copies of all the supporting materials relied upon by the agency.[1] The agency thus met its burden under 5 U.S.C. § 7513(e), and the administrative judge was justified in relying on those materials.

3. Ms. Porzillo makes the related claim that the Board failed to take into account "new evidence that was not readily available" to her prior to the hearing. Listing five examples of such "new evidence," Ms. Porzillo argues that, despite her due diligence, she was "not aware of documents" located on the CD that the government provided to

---

[1] Ms. Porzillo argues that without access to the agency's computer databases she was unable to verify whether the Excel file containing PII was actually attached to the e-mail that she was accused of sending to her personal e-mail accounts. She has admitted, however, that she forwarded the e-mail to her personal addresses, and several witnesses (as well as the documents themselves) indicated that the Excel file was attached. Because her argument appears to turn on her inability to confirm the authenticity of government-provided documents, and because she has offered no reason to question the authenticity of those documents, we reject her claim of error.

her before the hearing, which contained the e-mail messages sent to and from her computer at work. Ms. Porzillo asserts that she "could not access the files because they were blocked by Outlook and the email showed the attachments as 'place marks.'"

Ms. Porzillo's argument again appears to focus on her inability to review or verify the original files and e-mail messages on the actual computer databases where they are stored. To the extent she is making the further assertion that she was denied access to certain documents because of technical difficulties that went uncorrected by the agency, our review of the record indicates that Ms. Porzillo failed to raise that discovery issue in her submissions to the administrative judge. As such, she has waived that argument. See, e.g., Pierce v. Merit Sys. Prot. Bd., 242 F.3d 1373, 1375 (Fed. Cir. 2001); Synan v. Merit Sys. Prot. Bd., 765 F.2d 1099, 1101 (Fed. Cir. 1985).

In any event, there is nothing in the record to suggest that Ms. Porzillo did not receive (or did not already possess) all the relevant documents in some accessible form (paper, electronic, or otherwise) prior to the hearing. Ms. Porzillo does not challenge the agency's representation that she received paper copies of the relevant e-mails on which the agency relied. Moreover, in her petition for review she stated that she had saved "over 15,000 email messages [from her] employment at HHS" but "did not have enough time" to review them prior to the hearing. Ms. Porzillo provides no explanation for why she did not have enough time to locate the relevant documents that were apparently within her possession. We therefore conclude that Ms. Porzillo has failed to establish that her petition for review presented new evidence that was not previously available to her despite due diligence. See 5 C.F.R. § 1201.115(d)(1).

4. Ms. Porzillo asserts that she was prejudiced because she was not given a copy of a memorandum by Mr. Clutch that related to the charge of failure to follow supervisory guidance. However, the record shows (and Ms. Porzillo does not deny) that the agency provided her with a copy of the memorandum prior to the November 18, 2007, hearing and that it was a part of the record before the administrative judge. To the extent that she claims the production of that document was delayed, she has failed to explain how any such delay prejudiced her.

5. Ms. Porzillo argues that the administrative judge improperly conducted ex parte settlement discussions with the agency without her approval. Her allegations, however, are contradictory. She argues that she was "never given the opportunity to enter into [ ] negotiations" with the agency, yet she concedes that she was offered (and declined) at least one settlement proposal. She further contends that the administrative judge "interfered and took over the negotiations," but also states that "there is no evidence that settlement negotiations actually took place." As support for her contention regarding the administrative judge's "interference," Ms. Porzillo references a voicemail message from the administrative judge, in which he allegedly "accused [her] of making 'demands'" and stated that she was unlikely to prevail in her case.

The voicemail message and Ms. Porzillo's own brief demonstrate that the administrative judge simply attempted to facilitate settlement discussions by conveying information from the agency to her. The voicemail message relays a settlement offer made by the agency. It also references the "letter and accompanying chart" that she sent to the agency, which listed the minimum amount that she insisted on to settle her appeal and indicated that "anything less than [that amount] is unacceptable." The

administrative judge's message encouraged Ms. Porzillo to submit a more "reasonable" counteroffer and offered the administrative judge's "considered opinion," upon review of the full record, that there was a risk that she might "walk away with nothing" if the case went to a hearing. Ms. Porzillo ultimately rejected the agency's settlement offer.

The recited evidence shows that Ms. Porzillo was able to participate meaningfully in settlement discussions with the agency. Contrary to Ms. Porzillo's contentions, nothing suggests that the administrative judge was negotiating unilaterally with the agency. The administrative judge served merely as a facilitator of communications between the parties, a role that is expressly permitted by the relevant regulations. See 5 C.F.R. § 1201.41(c)(1) ("The judge may initiate attempts to settle the appeal informally at any time.").

6. Ms. Porzillo contends that the Board ignored the "favoritism demonstrated by the administrative judge to the agency and the continuous antagonism he demonstrated" toward her. She bases that assertion on several incidents, including the administrative judge's allegedly improper conduct in settlement discussions, his alleged reference to Ms. Porzillo as a "dry drunk," his reprimand of Ms. Porzillo for showing emotion during the hearing, and his reference to Jesus Christ in his opinion.

In order to be entitled to a new hearing on the basis of bias, Ms. Porzillo must show that the administrative judge exhibited "a deep-seated favoritism or antagonism that would make fair judgment impossible." Bieber v. Dep't of the Army, 287 F.3d 1358, 1362 (Fed. Cir. 2002). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that

derives from an extradministrative judicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id.

None of Ms. Porzillo's evidence even remotely satisfies that standard. The administrative judge's involvement in the settlement discussions was not improper, and the administrative judge's statement that Ms. Porzillo faced the risk that she might "walk away with nothing" did not establish "a deep-seated favoritism or antagonism that would make fair judgment impossible." See Atanus v. Merit Sys. Prot. Bd., 434 F.3d 1324, 1327 (Fed. Cir. 2006). Nor is there any impropriety in the administrative judge's reference to the term "dry drunk." Ms. Porzillo initially introduced that term during the hearing, and the administrative judge used the term only in seeking clarification regarding its relevance, e.g., "Why do I need to know about a dry drunk?"; "it can only be relevant if [Dr. Presant] can state to me, with some specificity, that you were a dry drunk and that it did impair your ability[.]" Such use does not evidence antagonism or the potential for unfairness. The administrative judge's reprimand of Ms. Porzillo during the hearing likewise does not constitute reversible error. He merely reminded Ms. Porzillo to conduct herself in accordance with proper hearing decorum: "We have to not express any emotion or laughter or disappoint[ment] or crying . . . . I don't want [you] to . . . make faces at the witness . . . that's not fair." Such instructions were well within the administrative judge's authority in conducting the hearing, and he similarly admonished the agency's counsel later in the hearing. Finally, the administrative judge's reference to Jesus Christ in the opinion was in a quotation of Ms. Porzillo's e-mail message that accused Ms. Akel of lying. There was nothing improper in quoting the message, which was the subject of Charge 3 (failure to follow supervisory guidance); it does not in any

way demonstrate bias against Ms. Porzillo. Having reviewed the hearing transcript in its entirety, we conclude that Ms. Porzillo's claims of bias or partiality on the part of the administrative judge are unsubstantiated and clearly do not constitute reversible error.

7. Ms. Porzillo argues that the administrative judge erred by not requiring the agency to prove that her misconduct was willful. It appears that her argument applies only to Charge 2 (the subsidy payment errors), as the record establishes—and Ms. Porzillo largely acknowledges—that she acted intentionally with respect to the conduct alleged in Charges 1 and 3.[2] With respect to Charge 2, the administrative judge properly considered intent where it was required by the charge and properly ignored intent where it was not. An agency "must prove all of the elements of the substantive offense with which an individual is charged." King v. Nazelrod, 43 F.3d 663, 666 (Fed. Cir. 1994). Intent or willfulness is not necessarily an element of every charge of misconduct against an employee; it is only required to support particular types of charges. See Lachance v. Merit Sys. Prot. Bd., 147 F.3d 1367, 1372-73 (Fed. Cir. 1998) (Board erred in ruling that the specification required the agency to prove intent to impede an investigation, where a review of the proposal and decision notices made clear that intent was "not an essential part of the charge").[3]

---

[2]    Regarding Charge 1, Ms. Porzillo admitted that she forwarded to her personal e-mail accounts the message that attached the PII-laden Excel file; she admitted that she deliberately used another employee's password to access the MITTS database; and she acknowledged that she gave that employee the cipher combination to her office door. In addition, regarding Charge 3, Ms. Porzillo concedes that on September 21, 2007, she intentionally sent an e-mail to Ms. Akel after being told by Mr. Clutch that Ms. Akel did not wish to associate with her any further.

[3]    The case that Ms. Porzillo cites in her petition for review, Murray v. Department of the Army, addressed charges based on falsification or fraud, which can

Regarding the first two specifications of Charge 2—Ms. Porzillo's retroactive approval of a childcare subsidy payment and a recertification without the approval of her supervisor or the applicant's employer—the administrative judge properly considered whether Ms. Porzillo deliberately failed to seek the necessary authorization. That inquiry was warranted, as those specifications allege that Ms. Porzillo acted "without authority" or "without the approval" to act. However, the last three specifications of Charge 2 appear to require only error (e.g., as to the amount of the subsidy), regardless of whether or not such error was willful. Although the last three specifications suggest that Ms. Porzillo possessed sufficient knowledge to realize that the payments she approved were erroneous, those specifications do not require a showing of intent or willfulness; rather, the language of the charge would encompass even inadvertent or careless error. The administrative judge thus properly sustained the charges, even absent a showing of intent. Finally, contrary to Ms. Porzillo's suggestion, the agency never alleged, in any specification, that Ms. Porzillo intended to cause harm to the government or to her coworkers; thus, it was not required to prove such intent. We find no error in the administrative judge's conclusion that the agency met its burden of establishing all requisite elements of the charges.

8. Ms. Porzillo claims that the Board failed to consider evidence that allegedly refutes the charges of misconduct against her. We have reviewed each identifiable item that Ms. Porzillo alleges was not considered. We conclude that the evidence in

---

be sustained only upon a finding of intent to deceive or mislead. 40 M.S.P.R. 250, 255 (1989). By contrast, as the administrative judge noted, the charge of failure to follow supervisory instructions "does not turn on proof of intent." Hamilton v. U.S. Postal Serv., 71 M.S.P.R. 547, 555-56 (1996).

question was either already before the administrative judge (i.e., contained in hearing testimony and/or exhibits),[4] or was not relevant to the charges against Ms. Porzillo. For example, Ms. Porzillo's ability to access the restricted P: drive, even though it was discussed extensively at the hearing, is not relevant to Charge 1, Specification 1, which alleges that Ms. Porzillo's violations resulted from her acts of downloading and e-mailing documents containing PII, not merely from accessing them on the P: drive. Likewise, the fact that retroactive approval of childcare subsidy payments was occasionally granted cannot assist Ms. Porzillo with respect to Charge 2, Specifications 1 and 2, as she did not refute the evidence that she failed to obtain the required supervisory approval for the retroactive payments at issue.

Even taking into account all of Ms. Porzillo's cited evidence (as we presume the administrative judge did), we find substantial support for the administrative judge's decision to sustain the charges and penalty. Upon appellate review, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Simpson v. Office of Pers. Mgmt., 347 F.3d 1361, 1364 (Fed. Cir. 2003). "We do not substitute our judgment for that of the board as to the weight of the evidence or the inferences to be drawn therefrom." Cross v. Dep't of Transp., 127 F.3d 1443, 1449

---

[4] Although Ms. Porzillo questions whether the administrative judge and the Board were "aware of certain facts and evidence," she lists many items with a citation to the record before the administrative judge. In certain cases, such as for the material cited for Charge 3, Ms. Porzillo acknowledges that "the MSPB and administrative judge had sufficient evidence" to consider her position on that issue. As we have noted, absent an express statement to the contrary, a fact-finder is presumed to have reviewed all the evidence presented. Medtronic, 789 F.2d at 906.

(Fed. Cir. 1997). In light of this deferential standard of review and upon review of the extensive documentary and testimonial evidence cited by the administrative judge in his opinion,[5] we hold that the Board's decision is supported by substantial evidence and is not infected with legal error.

With respect to other assertions in Ms. Porzillo's brief, we note that an appellant ordinarily waives any arguments that are not developed on appeal. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320-21 (Fed. Cir. 2006) (treating insufficiently developed arguments as waived). Thus, for example, Ms. Porzillo's statement that "[t]here were other indications and/or demonstrations of error[,]" coupled with a reference to "Charge 2: 162 points," is insufficient to preserve the 162 points of argument for appeal. Nevertheless, in light of Ms. Porzillo's pro se status, we have undertaken to review what we presume to be the points pertaining to each charge in Ms. Porzillo's petition for review submitted to the full Board. Following our review of those points, we conclude that they included no new, previously unavailable evidence and failed to demonstrate reversible error in the administrative judge's interpretation of the laws or regulations governing this action.

Accordingly, we uphold the Board's order sustaining the charges and penalty.

---

[5]     Ms. Porzillo chose not to testify at the hearing. She attempted to make certain assertions as to the facts while she was questioning other witnesses, but those unsworn assertions were appropriately ruled to be inadmissible as evidence.